**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| TAASERA LICENSING LLC, | ) | Case No. 7:26-cv-00330 |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| ARCTIC WOLF NETWORKS, INC., | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Taasera Licensing LLC ("Taasera" or "Plaintiff") files this original Complaint against Arctic Wolf Networks, Inc. ("Arctic Wolf" or "Defendant") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

## THE PARTIES

1. Taasera is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 313 South Washington Street, Marshall, Texas 75670.

2. Upon information and belief, Defendant Arctic Wolf Networks, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 8939 Columbine Road, Eden Prairie, Minnesota 55347. Upon information and belief, Arctic Wolf is registered to transact business in the State of Texas under Texas Secretary of State File No. 0804753871 and maintains an office in this Judicial District at 211 North Loop 1604 East, Suite 130, San Antonio, Texas 78232.

3. Upon information and belief, Arctic Wolf, directly or through subsidiaries or intermediaries, places its products and/or services, including those accused of infringement herein, into the stream of commerce which terminates in the Western District of Texas.

## JURISDICTION AND VENUE

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 1367.

5. This Court has specific and personal jurisdiction over Arctic Wolf consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Arctic Wolf has sufficient minimum contacts with the forum because Arctic Wolf transacts substantial business in the State of Texas and in this Judicial District. Further, Arctic Wolf has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District and elsewhere throughout the United States, as alleged in this Complaint. For example, on information and belief, the Accused Instrumentalities is available for purchase in this Judicial District.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because Arctic Wolf is subject to personal jurisdiction in this Judicial District, has committed acts of patent infringement in this Judicial District, and has a regular and established place of business in this Judicial District. On information and belief, Arctic Wolf maintains a physical place of business in this Judicial District, namely an office located at 211 North Loop 1604 East, Suite 130, San Antonio, Texas 78232, which Arctic Wolf identifies as its Texas office on its public website and which Arctic Wolf operates as one of its security operations centers. On information and belief, Arctic Wolf, through its own acts and/or through the acts of others, makes,

uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District such that this venue is a fair and reasonable one.

## PATENTS-IN-SUIT

7. On March 2, 2010, the United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 7,673,137 entitled "System and Method for the Managed Security Control of Processes on a Computer System" ("the '137 Patent").

8. On December 4, 2012, the USPTO duly and legally issued U.S. Patent No. 8,327,441 entitled "System and Method for Application Attestation" ("the '441 Patent").

9. On September 30, 2014, the USPTO duly and legally issued U.S. Patent No. 8,850,517 entitled "Runtime Risk Detection Based on User, Application, and System Action Sequence Correlation" ("the '517 Patent").

10. On July 28, 2015, the USPTO duly and legally issued U.S. Patent No. 9,092,616 entitled "Systems and Methods for Threat Identification and Remediation" ("the '616 Patent").

11. Taasera is the sole and exclusive owner of all right, title, and interest in the '137, '441, '517, and '616 Patents (collectively, the "Patents-in-Suit"), and it holds the exclusive right to take all actions necessary to enforce its rights in and to the Patents-in-Suit, including the filing of this patent infringement action. Taasera also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

12. Taasera has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, any prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

13. The ’137 Patent, naming Thomas James Satterlee and William Frank Hackenberger as inventors, generally relates to managed security control of processes executing on a computing device. The ’137 Patent discloses, among other things, techniques for validating a program before it executes and for monitoring the program at the operating system kernel when validation is incomplete, so that suspicious activity can be observed and addressed before the computing device is harmed. In one embodiment, a system for the managed security control of processes on a computing device is disclosed, including a pre-execution module that receives notice from an operating system that a new program is being loaded; a validation module that determines whether the program is valid; a detection module that intercepts a trigger from the operating system; and an execution module that monitors, at the operating system kernel of the computing device, the program in response to the trigger.

14. The ’441 Patent, naming Srinivas Kumar and Gurudatt Shashikumar as inventors, generally relates to application attestation. The ’441 Patent discloses, among other things, an attestation service that examines a runtime execution context and a security context for an application running on a computing platform and generates an attestation result reflecting security risks associated with the application at runtime. In one embodiment, a method of providing an attestation service for an application at runtime executing on a computing platform using an attestation server is disclosed, including receiving by the attestation server a runtime execution context indicating attributes of the application at runtime, including executable file binaries of the application and loaded components of the application; receiving by the attestation server a security context having an execution analysis of the executable file binaries and the loaded components of the application; generating an attestation result indicating security risks associated with the

application at runtime, based on the received runtime execution context and security context; and sending the attestation result.

15. The ’517 Patent, naming Srinivas Kumar as inventor, generally relates to assessing runtime risk for an application or device based on the correlation of user, application, and system actions. The ’517 Patent discloses, among other things, the use of rules that identify action sequences and assessment policies that include such rules to identify a runtime risk and to generate a behavior score reflecting that risk. In one embodiment, a method for assessing runtime risk for an application program is disclosed, including storing in a rules database a plurality of rules, each rule identifying an action sequence; storing in a policy database a plurality of assessment policies, each assessment policy including at least one rule; identifying a runtime risk using at least one of the assessment policies, the runtime risk indicating a risk or threat of the identified action sequence; and identifying, by a runtime monitor with a processing device, a behavior score based on the identified runtime risk, wherein an action sequence comprises at least two performed actions, each of the performed actions being a user action, an application action, or a system action.

16. The ’616 Patent, naming Srinivas Kumar and Dennis Pollutro as inventors, generally relates to providing an attestation service for the runtime operational integrity of a system. The ’616 Patent discloses, among other things, a computing platform comprising a network trust agent, an endpoint trust agent, and a trust orchestration server that together collect a dynamic context of runtime endpoint events from a monitored device, analyze those events together with third party network endpoint assessments, and generate an integrity profile for the system. In one embodiment, a method of providing an attestation service for providing runtime operational integrity of a system using a computing platform comprising a network trust agent, an endpoint trust agent, and a trust orchestration server is disclosed, including sending, by the endpoint trust agent on a monitored device, a dynamic context including endpoint events and

actions of the monitored device and applications executing on the monitored device at runtime; receiving, at the trust orchestration server, the dynamic context including the endpoint events of the monitored device and the applications executing on the monitored device at runtime; analyzing, by the trust orchestration server, the received endpoint events; receiving, by the trust orchestration server, third party network endpoint assessments; generating, by the trust orchestration server, temporal events based at least in part on analyzing the third party network endpoint assessments; correlating, by the trust orchestration server, the received endpoint events and the generated temporal events; and generating, by the trust orchestration server, an integrity profile for the system.

17. Arctic Wolf has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import infringing products, including but not limited to one or more of Arctic Wolf's (and its Cylance®, UpSight Security, Sevco Security, Tetra Defense, Revelstoke, Rank Software, Habitu8, and RootSecure predecessors') security-operations, endpoint-protection, EDR/MDR/XDR, network- and cloud-detection-and-response, threat-intelligence, exposure- and vulnerability-management, security-awareness, and incident-response products and services, including without limitation: (i) the Arctic Wolf® Aurora™ Platform (also marketed as the Aurora Superintelligence Platform and the Arctic Wolf Security Operations Cloud); (ii) Aurora™ Endpoint Security; (iii) Aurora™ Mobile Threat Defense; (iv) Aurora™ Focus; (v) Arctic Wolf® Managed Detection and Response (also marketed as Aurora MDR and Arctic Wolf Proactive MDR); (vi) the Aurora™ Agentic SOC; (vii) Arctic Wolf® Managed Risk and Aurora® Exposure Management; (viii) Arctic Wolf® Managed Security Awareness; (ix) Arctic Wolf® Incident Response; (x) the Arctic Wolf® Agent, Arctic Wolf® Sensors, Arctic Wolf® Appliances, and Arctic Wolf's scanners and log collectors; (xi) the Arctic Wolf® Unified Portal; (xii) Arctic Wolf®

Active Response and Arctic Wolf's Technology Alliance Partner integrations; (xiii) Arctic Wolf® Threat Intelligence and Aurora™ Threat Intelligence Plus; (xiv) Arctic Wolf® Resolve; and (xv) the Aurora™ Engine as delivered through Arctic Wolf's OEM Solutions program, together with any related, bundled, embedded, predecessor, or successor products and services (collectively, the "Accused Instrumentalities"). The Accused Instrumentalities infringe the claims of the Patents-in-Suit.

**<u>COUNT I</u>**
**(Infringement of the '137 Patent)**

18. Paragraphs 1 through 17 are incorporated by reference as if fully set forth herein.

19. Taasera has not licensed or otherwise authorized Arctic Wolf to make, use, offer for sale, sell, or import any products that embody the inventions of the '137 Patent.

20. Arctic Wolf has and continues to directly and/or indirectly infringe one or more claims of the '137 Patent, including without limitation, claim 1 of the '137 Patent.

21. Arctic Wolf has and continues to directly infringe the '137 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '137 Patent.

22. Arctic Wolf has and continues to indirectly infringe one or more claims of the '137 Patent by knowingly and intentionally inducing others, including but not limited to, Arctic Wolf's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the '137 Patent.

23. Arctic Wolf indirectly infringes one or more claims of the '137 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Arctic Wolf's customers and

end-users, in this Judicial District and elsewhere in the United States. For example, Arctic Wolf's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the '137 Patent. Arctic Wolf induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, manuals, advertisements, and online documentation. Because of Arctic Wolf's inducement, Arctic Wolf's customers and end-users use the Accused Instrumentalities and directly infringe the '137 Patent in a way Arctic Wolf intends. Upon information and belief, Arctic Wolf performs these affirmative acts with knowledge of the '137 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the '137 Patent.

24. Arctic Wolf indirectly infringes one or more claims of the '137 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Arctic Wolf's affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used, sold and offered for sale contribute to others' use and manufacture of the Accused Instrumentalities, such that the '137 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the '137 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Arctic Wolf to be especially made or adapted for use in the infringement of the '137 Patent. Arctic Wolf performs these affirmative acts with knowledge of the '137 Patent (at least as of the date of

this Complaint) and with intent, or willful blindness, that they cause the direct infringement of the ’137 Patent.

25. A preliminary chart mapping the elements of claim 1 of the ’137 Patent to a representative Accused Instrumentality is attached hereto as Exhibit A.

26. Taasera has suffered damages as a result of Arctic Wolf’s direct and indirect infringement of the ’137 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

27. Taasera has suffered, and will continue to suffer, irreparable harm as a result of Arctic Wolf’s infringement of the ’137 Patent, for which there is no adequate remedy at law, unless Arctic Wolf’s infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the ’441 Patent)**

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29. Taasera has not licensed or otherwise authorized Arctic Wolf to make, use, offer for sale, sell, or import any products that embody the inventions of the ’441 Patent.

30. Arctic Wolf has and continues to directly and/or indirectly infringe one or more claims of the ’441 Patent, including without limitation, claim 1 of the ’441 Patent.

31. Arctic Wolf has and continues to directly infringe the ’441 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’441 Patent.

32. Arctic Wolf has and continues to indirectly infringe one or more claims of the ’441 Patent by knowingly and intentionally inducing others, including but not limited to, Arctic Wolf’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents,

by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the ’441 Patent.

33. Arctic Wolf indirectly infringes one or more claims of the ’441 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Arctic Wolf’s customers and end-users, in this Judicial District and elsewhere in the United States. For example, Arctic Wolf’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the ’441 Patent. Arctic Wolf induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, manuals, advertisements, and online documentation. Because of Arctic Wolf’s inducement, Arctic Wolf’s customers and end-users use the Accused Instrumentalities and directly infringe the ’441 Patent in a way Arctic Wolf intends. Upon information and belief, Arctic Wolf performs these affirmative acts with knowledge of the ’441 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the ’441 Patent.

34. Arctic Wolf indirectly infringes one or more claims of the ’441 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Arctic Wolf’s affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used, sold and offered for sale contribute to others’ use and manufacture of the Accused Instrumentalities, such that the ’441 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the ’441 Patent, are not staple

articles or commodities of commerce, have no substantial non-infringing uses, and are known by Arctic Wolf to be especially made or adapted for use in the infringement of the ’441 Patent. Arctic Wolf performs these affirmative acts with knowledge of the ’441 Patent (at least as of the date of this Complaint) and with intent, or willful blindness, that they cause the direct infringement of the ’441 Patent.

35. A preliminary chart mapping the elements of claim 1 of the ’441 Patent to a representative Accused Instrumentality is attached hereto as Exhibit B.

36. Taasera has suffered damages as a result of Arctic Wolf’s direct and indirect infringement of the ’441 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

37. Taasera has suffered, and will continue to suffer, irreparable harm as a result of Arctic Wolf’s infringement of the ’441 Patent, for which there is no adequate remedy at law, unless Arctic Wolf’s infringement is enjoined by this Court.

**COUNT III**
**(Infringement of the ’517 Patent)**

38. Paragraphs 1 through 37 are incorporated by reference as if fully set forth herein.

39. Taasera has not licensed or otherwise authorized Arctic Wolf to make, use, offer for sale, sell, or import any products that embody the inventions of the ’517 Patent.

40. Arctic Wolf has and continues to directly and/or indirectly infringe one or more claims of the ’517 Patent, including without limitation, claim 1 of the ’517 Patent.

41. Arctic Wolf has and continues to directly infringe the ’517 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’517 Patent.

42. Arctic Wolf has and continues to indirectly infringe one or more claims of the ’517 Patent by knowingly and intentionally inducing others, including but not limited to, Arctic Wolf’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the ’517 Patent.

43. Arctic Wolf indirectly infringes one or more claims of the ’517 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Arctic Wolf’s customers and end-users, in this Judicial District and elsewhere in the United States. For example, Arctic Wolf’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the ’517 Patent. Arctic Wolf induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, manuals, advertisements, and online documentation. Because of Arctic Wolf’s inducement, Arctic Wolf’s customers and end-users use the Accused Instrumentalities and directly infringe the ’517 Patent in a way Arctic Wolf intends. Upon information and belief, Arctic Wolf performs these affirmative acts with knowledge of the ’517 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the ’517 Patent.

44. Arctic Wolf indirectly infringes one or more claims of the ’517 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Arctic Wolf’s affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used,

sold and offered for sale contribute to others' use and manufacture of the Accused Instrumentalities, such that the '517 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the '517 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Arctic Wolf to be especially made or adapted for use in the infringement of the '517 Patent. Arctic Wolf performs these affirmative acts with knowledge of the '517 Patent (at least as of the date of this Complaint) and with intent, or willful blindness, that they cause the direct infringement of the '517 Patent.

45. A preliminary chart mapping the elements of claim 1 of the '517 Patent to a representative Accused Instrumentality is attached hereto as Exhibit C.

46. Taasera has suffered damages as a result of Arctic Wolf's direct and indirect infringement of the '517 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

47. Taasera has suffered, and will continue to suffer, irreparable harm as a result of Arctic Wolf's infringement of the '517 Patent, for which there is no adequate remedy at law, unless Arctic Wolf's infringement is enjoined by this Court.

## COUNT IV
## (Infringement of the '616 Patent)

48. Paragraphs 1 through 47 are incorporated by reference as if fully set forth herein.

49. Taasera has not licensed or otherwise authorized Arctic Wolf to make, use, offer for sale, sell, or import any products that embody the inventions of the '616 Patent.

50. Arctic Wolf has and continues to directly and/or indirectly infringe one or more claims of the '616 Patent, including without limitation, claim 1 of the '616 Patent.

51. Arctic Wolf has and continues to directly infringe the ’616 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the ’616 Patent.

52. Arctic Wolf has and continues to indirectly infringe one or more claims of the ’616 Patent by knowingly and intentionally inducing others, including but not limited to, Arctic Wolf’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that infringe one or more claims of the ’616 Patent.

53. Arctic Wolf indirectly infringes one or more claims of the ’616 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement of others, such as Arctic Wolf’s customers and end-users, in this Judicial District and elsewhere in the United States. For example, Arctic Wolf’s customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their practice and use of the inventions claimed in the ’616 Patent. Arctic Wolf induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Instrumentalities, and providing instructions, documentation, and other information to customers and end-users urging them to use the Accused Instrumentalities in an infringing manner, including technical support, marketing, manuals, advertisements, and online documentation. Because of Arctic Wolf’s inducement, Arctic Wolf’s customers and end-users use the Accused Instrumentalities and directly infringe the ’616 Patent in a way Arctic Wolf intends. Upon information and belief, Arctic Wolf performs these affirmative acts with knowledge of the ’616 Patent (at least as of the date of this Complaint) and with the intent, or willful blindness, that the induced acts directly infringe the ’616 Patent.

54. Arctic Wolf indirectly infringes one or more claims of the ’616 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this Judicial District and elsewhere in the United States. Arctic Wolf’s affirmative acts of selling and offering to sell the Accused Instrumentalities in this Judicial District and elsewhere in the United States and causing the Accused Instrumentalities to be manufactured, used, sold and offered for sale contribute to others’ use and manufacture of the Accused Instrumentalities, such that the ’616 Patent is directly infringed by others. The accused components within the Accused Instrumentalities are material to the inventions of the ’616 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Arctic Wolf to be especially made or adapted for use in the infringement of the ’616 Patent. Arctic Wolf performs these affirmative acts with knowledge of the ’616 Patent (at least as of the date of this Complaint) and with intent, or willful blindness, that they cause the direct infringement of the ’616 Patent.

55. A preliminary chart mapping the elements of claim 1 of the ’616 Patent to a representative Accused Instrumentality is attached hereto as Exhibit D.

56. Taasera has suffered damages as a result of Arctic Wolf’s direct and indirect infringement of the ’616 Patent and is entitled to an award of monetary damages in an amount not less than a reasonable royalty, the precise amount to be proved at trial.

57. Taasera has suffered, and will continue to suffer, irreparable harm as a result of Arctic Wolf’s infringement of the ’616 Patent, for which there is no adequate remedy at law, unless Arctic Wolf’s infringement is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Taasera prays for relief against Arctic Wolf as follows:

a. Entry of judgment declaring that Arctic Wolf has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b. Entry of judgment declaring that Arctic Wolf's infringement of the Patents-in-Suit is willful;

c. An order awarding damages sufficient to compensate Taasera for Arctic Wolf's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs;

d. An order pursuant to 35 U.S.C. § 283 permanently enjoining Arctic Wolf, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of one or more of the Patents-in-Suit;

e. Entry of judgment declaring that this case is exceptional and awarding Taasera its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

f. An accounting for acts of infringement;

g. Such other equitable relief which may be requested and to which Taasera is entitled; and

h. Such other and further relief as the Court deems just and proper.

Dated: August 19, 2026

Respectfully submitted,

*/s/ Justin Kurt Truelove*

Justin Kurt Truelove
Texas State Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston
Marshall, Texas 75670
Phone: 903-938-8321
Fax: 903-215-8510

*Attorney for Plaintiff,*
*Taasera Licensing LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service.

*/s/ Kurt Truelove*